UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SANDY J. BATTISTA,<br>    Plaintiff,<br><br>v.<br><br>ROBERT MURPHY, DAVID BROUILLETTE,<br>ROGER PARENT, AMY CALVAO, and<br>IRIS HAILEY,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 09cv11406-NG |

Gertner, D.J.:

### MEMORANDUM AND ORDER RE: MOTIONS TO DISMISS
August 16, 2010

Plaintiff, Sandy Battista, brings this action *pro se* against Massachusetts Department of Corrections ("DOC) employees, Robert Murphy, David Brouillette, Roger Parent, and Amy Calvao, and a mental health clinician employed by Forensic Health Services, Iris Hailey. Plaintiff is civilly committed to the Massachusetts Treatment Center ("MTC").  She alleges that defendants unlawfully confiscated her $750 money order in violation of 103 CMR 431.00 et seq., the Massachusetts Declaration of Rights, her due process rights under the U.S. Constitution, and 42 U.S.C. § 1983.  She seeks injunctive relief and damages.  Defendants have filed motions to dismiss.  Because I find that Battista has not alleged a violation of her federal or constitutional rights, **defendants' motions to dismiss are GRANTED.**  Documents #14, 20.

### I.     BACKGROUND

On May 4, 2009, plaintiff received a $750 money order in the mail from an "Ann Marie Battista."  Compl. ¶ 12.  Two days later, the DOC Director of Security, not a party here, informed her that the money was being withheld pending investigation.  She also notified Battista that she could appeal the decision to the Prison Superintendent.  Id. ¶ 13; id. Ex. A. Plaintiff had previously received an Observation of Behavior Report for receiving money orders

in violation of MTC rules.  Id. Exs. D, G.  In 2008, another prisoner sent $1,200 to Battista in the name of "Ann Marie Battista," apparently to compensate her for sexual activities.  Id.

MTC employees became suspicious of the May 4 money order because, in addition to the sender's name, the money order gave a Wakefield, Massachusetts address, but it was purchased in Pittsfield, Massachusetts and the envelope was postmarked from Connecticut.  Further, a review of Battista's file showed that she had no relatives named "Ann Marie."  During the investigation, defendant Brouillette learned that an Ann Marie Battista had lived at the Wakefield address several years before, but no longer lived there.  They contacted Ms. Battista, who stated that she did not have any relatives in MTC and had not sent any money there.  Id. Ex. D.  Further, defendants recorded a May 2, 2009 phone call between the resident who admitted to sending plaintiff the 2008 money order and a man not in prison.  In it, the resident asked the man if he "ha[d] the whole thing?" The man responded, "[Y]es, [$]750.00."  Id.

Defendant Brouillette completed the investigation on May 19, 2009.  He recommended withholding the money and issuing an Observation of Behavior Report.  Id.  Battista appealed the decision to withhold the money order, and her appeal was referred to the Behavior Review Committee ("BRC"), composed of Defendants Parent, Calvao, and Hailey.  Id. Ex. E.  Defendant Hailey, a mental health clinician, was appointed to the BRC, as required by Massachusetts regulations.  See 103 CMR 431.09(1)(a) ("The B.R.C. shall consist of three persons appointed by the Superintendent; one security staff member, one clinician, and one program staff member.").  After continuing the hearing to allow Battista to obtain counsel, the BRC held its hearing on June 15, 2009. Id. ¶ 21.  Two days later, the Committee issued its decision finding plaintiff guilty of transferring funds between residents using a fictitious sender.  It imposed a

twenty-one day loss of yard privileges and a five day unit restriction.  Id. Ex. I.

Battista appealed the decision.  She included in her appeal a letter from her sister asserting that the money order was sent from one of her family members.  The Superintendent, defendant Murphy, denied her appeal on July 1, 2009.  Id. Ex. L.  Battista then filed suit here alleging violations of 103 CMR 431.00 et seq., the Massachusetts Declaration of Rights, the U.S. Constitution, and 42 U.S.C. § 1983.

## II.     DISCUSSION

### A.     Standard of Review

When ruling on a motion to dismiss, the court must accept all well-pleaded facts as true and make all reasonable inferences in the plaintiff's favor.  Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48-49 (1st Cir. 2009).  The court is to construe *pro se* pleadings "liberally."  Erickson v. Pardus, 551 U.S. 89, 94 (2007).  "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Id. (internal quotations omitted).  To survive defendants' motion to dismiss, Battista's complaint must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Here, I have taken into account the uncontested documents attached to Battista's complaint.  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (Court may consider "documents the authenticity of which are not disputed by the parties, . . . documents central to plaintiffs' claim [and] . . . documents sufficiently referred to in the complaint" without converting a motion to dismiss into one for summary judgment).

### B.     Battista's Section 1983 Claims

I will construe Battista's constitutional claims as brought under 42 U.S.C. § 1983.  In

order to prevail on a Section 1983 claim, "a plaintiff must show by a preponderance of the evidence that: (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Johnson v. Mahoney, 424 F.3d 83, 89 (1st Cir. 2005).  Clearly, defendants Murphy, Brouillette, Parent, and Calvao, MTC employees, were acting under the color of state law.  Defendant Hailey, though a private party, assumed the role of a public official in sitting on the BRC.  See West v. Atkins, 487 U.S. 42, 55-56 (1988) ("It is the [employee's] function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State."); Frazier v. Bailey, 957 F.2d 920, 928 (1st Cir. 1992) (Social workers performing "functions that [we]re inherently governmental in nature . . . acted under 'color of law' for the purpose of § 1983.").  Hailey, therefore, was also acting under "color of law."  Accordingly, the only question for this Court is whether defendants violated Battista's constitutional rights

Battista alleges that defendants violated her right to due process.  She does not clarify whether she is challenging the confiscation of the money order , the disciplinary proceedings, or both.  Construing her complaint liberally, I will take her complaint to raise both First Amendment claims as to the confiscation of the money order and due process claims as to the disciplinary proceedings.

### 1.   **Confiscation of Mail**

Prison officials may inspect incoming inmate mail and impose restrictions that further governmental interests such as security, order and rehabilitation.  Stow v. Grimaldi, 993 F.2d 1002, 1004 (1st Cir. 1993); Felton v. Lincoln et al., 429 F. Supp. 2d 226, 243 (D. Mass. 2006).

Restrictions on incoming mail must be reasonably related to legitimate penological interests. Thornburgh v. Abbott, 490 U.S. 401, 413 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987); United States v. Reid, 369 F.3d 619, 626 (1st Cir. 2004).  However, the Constitution entitles inmates to certain minimum procedural safeguards in the confiscation of their mail.  See Procunier v. Martinez, 416 U.S. 396 (1974) (mail censorship implicates the First Amendment and must be reasonable) overruled on other grounds Thornburgh, 490 U.S. at 413-14; Parenti v. Ponte, No. 84-1871-WF, 1990 WL 5191 (D. Mass. Jan. 19, 1990) (applying Procunier).  Under Procunier, when a prison decides to censor or withhold an inmate's mail, the minimum procedural safeguards require:

> that an inmate be notified of the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints must be referred to a prison official other than the person who originally disapproved the correspondence.

416 U.S. at 418-19; see also Bonner v. Outlaw, 552 F.3d 673, 677 (8th Cir. 2009) (Procunier provides minimum procedural safeguards for censoring packages).

These minimum protections are incorporated into Massachusetts regulations 103 CMR 481.15 and 481.16. See Moses v. Dennehy, 523 F. Supp. 2d 57, 65 (D. Mass. 2007) (finding 103 CMR 481 to be facially valid).  103 CMR 481.16 requires prison officials to promptly notify an inmate and the sender, if identifiable, if his or her mail is withheld.  The inmate must be informed of the reason for withholding the mail and the fact that an appeal may be submitted to the superintendent.  103 CMR 481.16(1).  Within a "reasonable time" of receiving an appeal, the superintendent "shall . . . make a decision and notify the appellant." Id. at 481.16(5).

Defendants scrupulously followed these regulations.  Two days after the MTC received

the money order, the DOC Director of Security notified Battista that the money was being withheld pending investigation. It informed her of her right to appeal to the superintendent. Another MTC employee, defendant Brouillette, carried out the investigation within two weeks of the letter's receipt. Battista appealed the decision to withhold the money order, and the BRC, composed of defendants Parent, Calvao, and Hailey, heard the appeal. Even viewed in the light most favorable to plaintiff, Battista has not alleged facts that constitute a violation of any of these procedures.

### 2. Disciplinary Charges

Due process mandates that inmates receive certain procedural protections when faced with disciplinary charges.[1] An inmate must have: "(1) [A]dvance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 454 (1985). The First Circuit has held the MTC's disciplinary system and BCR procedures to be constitutionally sound. King v. Greenblatt, 149 F.3d 9, 18 (1st Cir. 1998).

Here, Battista received all of these procedural protections. The BRC hearing took place five weeks after the money order was withheld. Not only did Battista have advanced notice, but she was represented by counsel. And, she received a written report from the BRC explaining its decision. Battista's only allegation, then, seems to be that the BRC reached the wrong decision.

---

[1] Battista also asserts claims under Massachusetts Bill of Rights, but 42 U.S.C. § 1983 applies only to federal claims. Further, this court only has jurisdiction under 42 U.S.C. § 1331 if her federal claims survive. I therefore have limited my decision to the federal claims.

This is simply not a constitutional violation.

### C. Alleged Violations of Massachusetts and MTC Regulations

The Court lacks jurisdiction over Battista's claims that defendants violated MTC regulations, but if Battista chooses to pursue her claim further, she is not without remedy. Mass. Gen. L. c. 249 § 4 provides Battista the right to challenge the prison officials' application of DOC regulations in an action in the nature of certiorari. This Court is simply not the proper forum. An action under Chapter 249 § 4 must be brought in state court. See Ford v. Comm'r of Correction, 537 N.E.2d 1265, 1266 (Mass. App. Ct. 1989).

### III. CONCLUSION

Battista has failed to allege facts demonstrating a violation of her federal or constitutional rights. **Accordingly, defendants' motions to dismiss are GRANTED.** Documents #14, 20.


**SO ORDERED.**

Date: August 16, 2010                                     /s/   *Nancy Gertner*
                                                          **NANCY GERTNER, U.S.D.C.**